UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTINO [TRINITY] K., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br><br> Defendant. | No. 23 CV 16327 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Trinity K.[1] appeals from the Social Security Commissioner's decision denying her disability insurance benefits and supplemental security income. For the reasons discussed below, the Commissioner's decision is affirmed.

I. **Legal Standard**

Because the Social Security Appeals Council declined review, the administrative law judge's decision is final and subject to judicial review.[2] *See* 20 C.F.R. § 404.984(a). Judicial review of social security decisions is limited—I ask only whether the ALJ applied the law correctly and supported their decision with substantial evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Substantial evidence is not a high bar; it means "such relevant evidence as a

---

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22. Although not her legal name, plaintiff goes by the name Trinity K. and uses she/her pronouns. [10] at 2 n.1.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council, as is the case here, is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. of New York v. NLRB.*, 305 U.S. 197, 229 (1938)). I analyze whether the ALJ built an "accurate and logical bridge" between the evidence and the conclusion, *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and whether the ALJ's analysis had "enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014).

## II. Background

Trinity K. was diagnosed with post-traumatic stress disorder, depression, anxiety, HIV, and hypertension. [8-1] at 24.[3] She applied for disability insurance benefits and supplemental social security income. Both claims were denied initially and upon reconsideration. *Id.* at 114–19, 123–48. She appealed the denial to an administrative law judge. *Id.* at 120–21. Plaintiff testified at the hearing along with an impartial medical expert and a vocational expert. *Id.* at 21. The ALJ determined that plaintiff was capable of a full range of work at all exertional levels subject to nonexertional limitations. *Id.* at 26–27. Because she could perform jobs existing in significant numbers in the national economy, the ALJ found plaintiff was not disabled. *Id.* at 28–29.

To determine whether Trinity K. was disabled, the ALJ applied the agency's five-step test. [8-1] at 23–29. The five steps ask: 1) whether the claimant is currently

---

[3] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of filings.

employed, 2) whether the claimant's impairment is severe, 3) whether the impairment is one that the Commissioner considers conclusively disabling, 4) if the impairment is not one that the Commissioner considers conclusively disabling, whether the claimant's residual functional capacity allows her to perform her past work, and 5) if her RFC is too limited for her to perform her past work, whether there are other jobs in the national economy that she is capable of performing. 20 C.F.R. § 404.1520(a)(4). If the agency cannot determine disability at any step, it goes on to the next step. *Id.* The claimant has the burden of proving disability at steps one through four; the burden of proof shifts to the Commissioner at step five. *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 9, 2020. [8-1] at 23. At step two, the ALJ determined that plaintiff had three severe impairments: post-traumatic stress disorder, anxiety, and depression. *Id.* Plaintiff had the following non-severe impairments: HIV, hypertension, syphilis, obesity, and endocrine disorder. *Id.* at 24. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a conclusively disabling impairment. *Id.*

Because plaintiff's impairments were severe under step two but were not conclusively disabling under step three, the ALJ proceeded to determine plaintiff's residual functional capacity to complete steps four and five. [8-1] at 25–28. Residual functional capacity is an assessment of a claimant's ability to do sustained work-related physical and mental activities for 8 hours a day, 5 days a week. SSR 96-8p,

61 Fed. Reg. 34474, 34475 (July 2, 1996). The RFC is based on all relevant evidence in the record: a claimant's complete medical history; statements from medical sources about what the claimant is still capable of; and statements about the claimant's limitations from the claimant herself or others. 20 C.F.R. § 404.1545(a)(3).

The ALJ determined that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, subject to the following non-exertional limitations: she could perform routine work, involving occasional decision-making and occasional changes in the work setting, and she could have no more than brief and superficial interaction with the general public. [8-1] at 25.

In determining plaintiff's RFC, the ALJ considered plaintiff's testimony from the hearing about how her mental impairments affected her ability to concentrate, focus, remember, get along with others, and complete daily tasks. [8-1] at 25. Plaintiff reported sleeplessness, fatigue, nightmares, flashbacks, history of trauma, and fears for her safety. *Id.* at 26. The ALJ noted plaintiff's treatment with psychotropic medication and counseling. *Id.* He found that these impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements about the intensity, persistence, and limiting effects were not entirely consistent with the medical record because plaintiff had little treatment overall and generally normal mental status exams. *Id.*

The ALJ considered Dr. Mark Langgut's consultative psychiatric evaluation from January 2022 in which plaintiff was "polite, softspoken, and cooperative." [8-1] at 26. Plaintiff displayed some irritability and poor coping skills. *Id.* She had intact

4

memory, good fund of information, and ability to perform simple math. *Id.* She exhibited good judgment and "overall had only mild rumination."[4] *Id.*

Apart from Dr. Langgut's evaluation, the ALJ noted other findings in the medical record showing that plaintiff had intact memory, thought processes, impulse control, judgment, and insight. [8-1] at 26 (citing 354, 359, 363, 367, 374, 381 (treatment notes from 2019–20); 399, 403, 426 (treatment notes from 2020–22); 383–86 (Langgut examination); 525 (Alaka's 2022 examination); 539 (APN Moore's examination)). There was no indication of hospitalization due to any mental impairment and a limited history of counseling. *Id.* Based on Dr. Langgut's evaluation and other evidence from the medical record, the ALJ determined that the objective medical findings did not warrant more than what was included in the RFC. *Id.*

The ALJ considered the medical opinion of Kadijat Alaka (a licensed clinical professional counselor) but found it unpersuasive. [8-1] at 26–27. Alaka submitted a mental medical source statement opining on plaintiff's ability to work. *Id.* at 510–14. Alaka opined that plaintiff had memory, concentration, interaction, and adaptation limitations that would preclude performance in a regular work setting and cause her to be absent four or more days a month. *Id.* at 27. Alaka noted in her medical source statement that plaintiff was receiving weekly counseling and was prescribed psychotropic medicine by APN Whitney Moore. *Id.* at 510. Alaka also submitted her

---

[4] The ALJ cited to counselor Kadijat Alaka's records, Exhibit 5F at page 3 ([8-1] at 510), but this information is a part of Dr. Langgut's evaluation contained at Exhibit 2F at page 3 ([8-1] at 385).

assessment of plaintiff from January 2022 for the Illinois Medicaid Comprehensive Assessment of Needs and Strengths and APN Moore's mental status examination of plaintiff from October 2022. *Id.* at 513–43, 546. The ALJ found Alaka's opinion to be unpersuasive because "the mental health treatment is limited and conservative, with normal status exams." *Id.* He also explained that he found the opinion to be unpersuasive because the report was prepared and submitted after the hearing, based on a short period of treating the claimant, and "far out of proportion to anything else in the record." *Id.* He summarized that the RFC was supported by plaintiff's lack of treatment and generally normal mental status exams. *Id.* at 27.

At step five, the ALJ determined that plaintiff could perform her past work as a hospital food service worker. [8-1] at 27. Alternatively, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy outside of her past relevant work. *Id.* at 27–28. The vocational expert testified that plaintiff could perform the requirements of the following jobs given her age, education, work experience, and RFC: floor waxer, hand packager, and lab equipment cleaner. *Id.* at 28. Relying on the vocational expert's testimony, the ALJ found that plaintiff was not disabled. *Id.*

The Social Security Appeals Council denied review of the ALJ's decision. [8-1] at 5–10. Plaintiff brings this suit seeking judicial review.

**III. Analysis**

The only issue is whether the ALJ erred in discrediting the medical opinion of plaintiff's counselor, Kadijat Alaka.

An ALJ need not defer to or give controlling weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a) (applying to claims filed after March 27, 2017). But an ALJ must evaluate the persuasiveness of each medical opinion based on several factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. *Id.* § 404.1520(c)(1)–(5). An ALJ must explain only how they considered the first two factors—supportability and consistency—but need not explain their consideration of the other factors. *Id.* § 404.1520c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.* § 404.1520c(c)(1). And consistency assesses how a medical opinion squares with other evidence in the record. *Id.* § 404.1520c(c)(2).

Plaintiff contends that the ALJ erred by failing to properly evaluate the supportability and consistency of Alaka's opinion. But, as the Commissioner points out, although the ALJ did not use the words supportability and consistency, he appropriately applied the § 404.1520c factors to Alaka's opinion and did not err in discounting it. The ALJ found Alaka's opinion to be unpersuasive because (1) the

mental health treatment was limited and conservative, (2) normal mental status exams, (3) the report was prepared and submitted after the hearing, (4) it was based on a short period of treating the claimant, and (5) it was "far out of proportion to anything else in the record." [8-1] at 27.[5]

The ALJ's reasoning, though brief, satisfied the minimal articulation standard and was supported by substantial evidence. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (ALJ must examine regulatory factors and "minimally articulate" his reasoning for crediting or discrediting medical opinions).[6] As to supportability, plaintiff says that the ALJ never compared Alaka's opinion to the evidence she presented to support her opinion. [10] at 9. But the ALJ reviewed Alaka's opinion in her medical source statement and Alaka's January 2022 assessment. The ALJ was unpersuaded by Alaka's opinion in part due to plaintiff's

---

[5] The Commissioner concedes that the submission of Alaka's opinion after the hearing was not a good reason to discredit it—especially after the ALJ invited plaintiff's counsel to submit medical evidence after the hearing. [10] at 10; [15] at 8. But that error was harmless, and it does not bear on the ALJ's consideration of the supportability and consistency factors. *See Simila v. Astrue*, 573 F.3d 503, 516–17 (7th Cir. 2009) (finding that an ALJ's error in discounting a doctor's opinion is harmless if the ALJ provides other reasons for discounting the opinion that are supported by substantial evidence). Plaintiff challenges the ALJ's characterization of Alaka's treatment as "a short period." [10] at 10. The ALJ's reason for discounting Alaka's opinion based on the counselor's short period of treating plaintiff goes to third factor—the relationship of the medical source with the claimant. It's not an essential factor in the § 404.1520c analysis, so I don't address it as part of the consistency and supportability analysis. In any case, an ALJ is entitled to consider the course of a plaintiff's treatment, and an ALJ's finding that a plaintiff's treatment is "conservative" is a factual determination warranting deference. *See Simila*, 573 F.3d at 519.

[6] *Grotts* assessed medical opinions under 20 C.F.R. § 404.1527(c)—the regulation applicable to claims filed before March 27, 2017. While the relevant factors in that regulation differ from the factors in the regulation applicable to post-2017 claims like plaintiff's, the new regulation does not disturb the principle that an ALJ must consider the relevant regulatory factors and minimally articulate their reasons for crediting or discounting a medical opinion.

8

normal mental status exams. He did not identify specific portions of Alaka's assessment in that conclusion, but he considered the 2022 assessment in the preceding paragraph summarizing the medical evidence showing normal findings. [8-1] at 26; *see Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (a reviewing court may look at an ALJ's discussion of evidence elsewhere in the decision); *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not… cite support for every proposition or chain of reasoning."). In that discussion, the ALJ noted that the medical record showed intact memory, thought processes, impulse control, judgment and insight. [8-1] at 26. He cited to Alaka's January 2022 evaluation of plaintiff's mental status, which noted "good" impulse control, "good" insight, and "WNL" (within normal limits) for the categories of judgment, memory, orientation, and cognition. *Id.* at 525. Alaka's report noted that plaintiff was cooperative; speech was at a "normal rate, tone, and volume"; thought process was "logical and coherent"; and insight, judgment, and attention/concentration were fair. *Id.* at 546. Here, the ALJ provided an explanation for why he discounted Alaka's opinion—Alaka's own examination of plaintiff's mental status showed normal results. In other words, her opinion was unsupported by the medical evidence she relied on. In doing so, the ALJ minimally articulated his why Alaka's opinion lacked support. And that determination was supported by the medical record.

The ALJ found that Alaka's report was "far out of proportion to anything else in the record"—in other words, it was not consistent with other medical evidence. [8-1] at 27. An ALJ is entitled to discount a medical opinion for being at odds with the

weight of the other medical evidence in the record. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (affirming ALJ's decision to discount opinion as "extreme" where other medical evidence did not support doctor's statement that plaintiff could not sit or stand for any meaningful period of time); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (affirming ALJ's determination that medical opinion was inconsistent with the overall record where plaintiff's pain was reported as being under "reasonably good control" and plaintiff could perform most activities just a few months prior). Plaintiff doesn't take issue with the ALJ's degree of articulation here, but she argues that this statement is inaccurate because Dr. Langgut's examination of plaintiff noted "somewhat unstable functional skills" that are consistent with Alaka's statements, particularly about off-task time. [10] at 10. The ALJ's consistency analysis borders on the type of boilerplate statement that fails to build a logical bridge from the evidence to conclusion. Nevertheless, the medical record overall reflected generally normal mental status exams, as the ALJ reasonably found. Other than Alaka's opinion in the medical source statement, nothing in the medical record contradicts the ALJ's assessment of normal mental status exams. *See* [8-1] at 354, 359, 363, 367, 374, 381 (treatment notes from 2019–20); 399, 403, 426 (treatment notes from 2020–22); 383–86 (Langgut examination); 525 (Alaka's 2022 examination); 539 (APN Moore's examination). Alaka's opinion was disproportionate to the record.

Plaintiff also takes specific issue with the ALJ's failure to consider medical evidence from Langgut's examination that was consistent with Alaka's opinion. But

10

plaintiff leaves out the full context of Langgut's finding. In the section of the report evaluating plaintiff's "responsibility," Dr. Langgut opined that plaintiff "appears to have adequate if somewhat unstable functional skills and the ability to manage those funds that might be awarded to [her] at this time." *Id.* at 386. Langgut's assessment of plaintiff's "adequate" but "somewhat unstable functional skills" in managing finances does not make the ALJ's determination that Alaka's opinion identified far more serious limitations unreasonable. Given the differences between Alaka's and Langgut's report (and the other record evidence), the ALJ's finding that Alaka's opinion was inconsistent with the rest of the medical record was supported by substantial evidence.

## IV. Conclusion

The Commissioner's motion to affirm, [14], is granted. Plaintiff's motion to reverse, [9], is denied. Enter judgment in favor of the Commissioner and terminate case.

ENTER:

                                          Manish S. Shah
                                          United States District Judge

Date: October 31, 2024